### In re CANTOR et al.

(Circuit Court of Appeals, Second Circuit. April 7, 1914.)

#### No. 54.

1. BANKRUPTCY (§ 241*)—PROCEEDINGS—EXAMINATION OF BANKRUPT—CONTEMPT PROCEEDINGS—LEAVE TO MOVE.

Where proceedings for the examination of a bankrupt were instituted by petitioning creditors and conducted by their counsel before the appointment of a receiver or trustee, an outside creditor, in the absence of any application to intervene or allegation of apathy, incompetence, or neglect, or interest on the part of petitioning creditors, was not authorized to institute proceedings to punish the bankrupt for contempt without leave.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 398, 402–404, 408, 409; Dec. Dig. § 241.*]

2. BANKRUPTCY (§ 241*)—EXAMINATION OF BANKRUPT—UNSATISFACTORY TESTIMONY—CONTEMPT.

During the examination of a bankrupt at the instance of petitioning creditors prior to the appointment of a receiver or trustee, he was asked to produce the cashbook of the bankrupt firm, of which he was a member, and he testified that he last saw the book in the office of the firm shortly before the appointment of a custodian of its property and left it where he saw it. Held, that in the absence of a certificate of the special commissioner taking the testimony, indicating that in his opinion the witness testified falsely or withheld information which he might have given, the testimony did not indicate such falsity or concealment on its face as would justify contempt proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 398, 402–404, 408, 409; Dec. Dig. § 241.*]

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

This cause comes here on petition to revise an order of the District Court, Southern District of New York, denying the application. of the petitioner to adjudge Samuel A. Cantor, a member of the bankrupt firm of Cantor Bros., guilty of contempt for failure to comply with an order requiring him to produce, on examination before a special commissioner, the cashbook of the firm of which he was a member. The original application to punish for contempt included as one of its grounds a charge that Cantor had testified falsely in the course of his examination. In view of the recent decision of this court in Re Kahn, 204 Fed. 581, 123 C. C. A. 107, the petitioner has not sought to review the order denying the application in respect to the question of false testimony.

The following is the opinion of Hand, District Judge, in the court below:

Samuel A. Cantor and Solomon Cantor, during the first six months of the year 1912, were doing business at 110 Hester street, in the city of New York, as retail merchants in dress goods, silks, and woolens. On the 29th day of July, 1912, creditors of the firm filed a petition in bankruptcy against them, and on the same day the court appointed one Bernard J. MacCorry custodian of their property. A clerk of the attorney for the petitioning creditors at once went to the shop at 110 Hester street and looked for all books. He swears that he found none, except one old checkbook.

This court issued an order on August 7, 1912, directing both bankrupts to appear before the deputy clerk of the court, appointed as special commissioner, under section 21a (Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3430]), to be examined concerning their acts, conduct, and their property; an adjudication having been entered theretofore. The bankrupt appeared on the 22d, 29th, and 30th of August before the commissioner and was examined at some length. Thereafter an order to show cause was obtained from this court on the 5th day of October, 1912, on petition of one Frederick W. Wakefield, who alleges that he is the credit manager of a corporation which is one of the creditors of the bankrupt, asking that the bankrupt Cantor be punished for contempt of court upon the ground that the bankrupt testified perjuriously and failed to submit to an examination concerning his affairs, and likewise that he concealed and still conceals his cashbook.

There are mixed together in this application two quite distinct proceedings, the incidents of, as well as the theory underlying, each of which is wholly different. There is, first, a petition to punish for contempt for failure to turn over a cashbook; there is, second, an application to punish for perjury on the examination. The first of these is a civil remedy designated to assist the administration of the estate; the second is a criminal contempt in which the court is in theory an actor and is vindicating its authority.

As to the first, I have always held as a practical matter of convenience that the receiver, when there is a receiver, should have in his hands the conduct of such matters in the first instance unless some other person interested should show that the receiver was not doing his duty. Here there was no receiver, but only a custodian, whose duty is only to preserve the assets and await the appointment of a trustee. The order for examination was obtained by the petitioning creditors, with whom the petitioner here had no connection. It is true that at one of the three hearings at which the bankrupt was examined Mr. Rosenberg conducted the examination, but it was as counsel for the petitioning creditors. I do not think that, without some ground shown, third persons may intervene to enforce by civil remedy subpœnas and orders obtained by the petitioning creditors. I do not mean that if suggestion were made of apathy, or incompetence, or neglect from interest, that I should not permit any creditor to intervene, but, where nothing of the sort is suggested, the petitioning creditors who have got the order and conducted the examination are, like a receiver, entitled to control its enforcement.

As to the criminal contempt, quite different considerations control, and any person who will undertake it may suggest to the court the property of some action and become amicus curiæ for so long as he will. However, this is a contempt primarily of the tribunal before which it arises, just as much here as though it were a case of disorder. The real moving party is the commissioner who finds himself impeded in the discharge of his duties. Of course, he has no power to punish for contempt, but he may certify the facts, like a referee. This is the proper course as much as though the witness had by disorderly, insolent, or threatening conduct broken up the hearing. The person aggrieved is the commissioner and through him the court, but the initiation of the proceeding should be his.

There is an especially proper reason for this, because in the case of alleged perjury so much depends upon the witness' bearing. When his words appear in print, it is sometimes possible to see that he is either evasive, or a downright perjurer, but generally it is extremely difficult to tell. This is especially true in the case of men of small education, to whom English is not a native tongue. Again and again such men within two consecutive sentences give the most contradictory answers. It is quite clear that they cannot mean this deliberately, but that they have not understood. In criminal contempts the accused has all the substantive benefits of one indicted (Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 444, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. [N. S.] 874), among them that of the degree of proof and without some certificate of the commissioner I certainly cannot say on this record that beyond a reasonable doubt this man was deliberately blocking the course of the proceeding by swearing to what he knew was false. The power undoubtedly exists, but it ought to be used very circumspectly. By that, I do not mean that it ought to be surrounded with absurd technicality which will destroy its value, but I do mean that all reasonable explanations should be made. A judge ought not to commit a man for contempt for perjury except in so plain a case as makes further attempt to examine the witness a farce, so obviously that no observer, who was present, could doubt that the witness was obviously trifling with the proceeding. He ought not to judge upon the balance of proof introduced to contradict the witness and so turn the examination into a trial of perjury, for this trenches on the criminal law itself. And, while the line cannot be abstractly stated with success, it can be so administered, if the judges will remember the purpose which it answers, and loyally accept the limitations which the defendant's right to a jury trial throws upon them.

There is one thing more: Every judicial proceeding and every charge to which another must respond justly requires that the respondent should know with reasonable definition what he has to answer. It will not do, as in this case, to throw at a man 120 pages of testimony and say generally that it is generally permeated with perjury. Some specification the most elementary rules of fair play demand, so that he may explain what he is charged with, and so that the judge may know on what the moving party relies. Nor is it any answer to say that the absurd precision of an old indictment at common law is not necessary; which, of course, it is not. The requirement is practical and will be treated practically, but for all that it is none the less real and necessary, and it is a condition, so far as I know, of every kind of judicial proceeding in every free country.

Motion denied without prejudice.

W. L. Ball, of New York City, for petitioner.

Leo Oppenheimer, of New York City, for respondents.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. [1] No receiver or trustee had been appointed, but only a custodian whose sole duty was to preserve the assets and await the appointment of a trustee. The order for examination was obtained by the petitioning creditors and it was conducted

by their counsel. The application to punish for contempt was made by an outside creditor, without previous application to the court for leave to intervene. We agree with the District Judge that orderly procedure requires a preliminary application to the court for leave to move, before an individual creditor undertakes to substitute himself for receiver, trustee, or petitioning creditors in a proceeding to enforce process or orders which they have obtained.

[2] Passing·this point, however, the record shows that Cantor was examined before the special commissioner as to the keeping of such a book and its whereabouts. He testified that he last saw the book in the office of the firm shortly before the appointment of the custodian, did not take it himself, but left it where he saw it. The testimony of the witness as it reads is, no doubt, rather unsatisfactory; but we did‹ not have the advantage of hearing it as he gave· it and of observing his demeanor on the stand. There is no certificate of the special commissioner, who did hear him, indicating that in his opinion the witness testified falsely, or held back information which he might have given. The District Judge held that, in the absence of such a certificate, he was not persuaded to the conclusion that the witness' statements were false or that he was concealing the book. Still less can we, who never saw or heard him decide on mere suspicion that his testimony was perjured, and, unless his statements are false, there is no evidence which will support the conclusion that he has the book or knows where it is.

The order is affirmed.